IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHERYL D. CHITTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:07cv861-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Cheryl D. Chitty applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (2000) and for supplemental security income benefits under Title XVI, 42 U.S.C. § 1381 *et seq.* (hereinafter collectively "the Act"). Her applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claims. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #9); Def.'s Consent to Jurisdiction (Doc. #10). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES the decision of the Commissioner.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-four years old and had completed the tenth grade at the time of the

hearing before the ALJ. (Tr. 19, 326-27). Plaintiff's primary past relevant work experience involved work as a "material sorter" at a wood processing plant. (Tr. 22, 76). Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 15, 2005 (Step 1). (Tr. 16). At Step 2, the ALJ found that Plaintiff suffers from the "following severe impairments: hypertension; headaches; major depressive disorder, moderate; and anxiety disorder." (Tr. 17). The ALJ nonetheless found Plaintiff did not possess an impairment or combination of impairments that met or equaled the criteria of any listed impairment set forth in the Listing of Impairments and, additionally, that "[n]o physician has mentioned limitations caused by any medically determinable impairment[s] that are of listing level severity." (Tr. 17). Thus, the ALJ found that Plaintiff retains the RFC to "perform unskilled work activity at the medium exertional level." (Step 3). (Tr. 17-21). At Step 4, the ALJ found that Plaintiff could perform her past relevant work as a "material sorter." (Tr. 22). At Step 5, the ALJ determined that, based on her age, education, past work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 21). Consequently, the ALJ found Plaintiff had not been disabled since the alleged onset date.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff sets forth three claims in challenging the Commissioner's decision: (1) "the ALJ's reasons for rejecting the opinion of Dr. Bendinger . . . are not based on substantial

evidence[;]" (2) "[t]he ALJ's finding that Ms. Chitty can perform the exertional demands of medium work is not based on substantial evidence[;]" and (3) "[t]he ALJ's finding that Ms. Chitty retains the [RFC] to perform her past relevant work as a material sorter is not based on substantial evidence." (Doc. #15 at 1).  Because the Court finds reversible error with respect to an issue that blends components of Plaintiff's first and second claims, below the Court pretermits discussion of claim three.

## V.   DISCUSSION

> ### A.   *The ALJ reversibly erred in apparently concluding that the State agency Physical Residual Functional Capacity Assessment made a part of the record constituted "medical expert" opinion about Plaintiff's functional capacities.*

The ALJ found that Plaintiff "retains the residual functional capacity to perform unskilled work activity at the medium exertional level." (Tr. 17).  The ALJ reached this determination despite the apparently contradictory conclusion of Plaintiff's treating physician, Dr. Bendinger.  Prior to the hearing before the ALJ, Dr. Bendinger had been Plaintiff's treating physician for a period of around eight years.  In completing a Physical Residual Functional Capacity Questionnaire ahead of the hearing, Dr. Bendinger listed several of Plaintiff's impairments and described her symptoms while ultimately concluding that she is incapable of performing "even 'low stress' jobs." (Tr. 290-91). The ALJ afforded "little weight" to Dr. Bendinger's opinion because, purportedly, "there is no evidence to show that Dr. Bendinger performed a functional capacity evaluation prior to his assessment

of the claimant's functional abilities," because Dr. Bendinger's opinion was "inconsistent with the nature of treatment [he had] provided, which was routine outpatient care," and because Dr. Bendinger's findings were inconsistent "with the minimal findings on diagnostic studies." (Tr. 21). The ALJ also found that Dr. Bendinger's assessment of Plaintiff's condition was "inconsistent with the claimant's activities of daily living, particularly the claimant's description of her activities while providing care for her two disabled adult sons." (Tr. 21). Plaintiff contends both that Dr. Bendinger's assessment is supported by the record, and that the ALJ's finding to the contrary, as well as his ultimate findings as to Plaintiff's RFC, are not supported by substantial evidence.

In December, 2005, a State agency disability examiner completed a Physical Residual Functional Capacity Assessment regarding Plaintiff. The exact findings of the lay disability examiner appear to have been wholly adopted by the ALJ in determining Plaintiff's RFC. *Compare* Physical Residual Functional Capacity Assessment (Tr. 222-229) *with* ALJ's Decision (Tr. 17). Moreover, it appears that the ALJ considered the disability examiner's assessment as that of a "State Agency medical expert[]." (Tr. 18). However, as Plaintiff contends, and Defendant does not challenge, it does not appear that any State agency physician reviewed or concurred with the findings of the disability examiner. Thus, it appears that the ALJ misapprehended the nature, and ultimate significance, of the State agency residual functional capacity assessment. This error assumes special significance because the ALJ discounted the opinion of Plaintiff's treating physician which, as Plaintiff

notes, constitutes the only expert medical opinion about the claimant's RFC in the entire record.  *See Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007).

In *Dewey*, the Eight Circuit reversed the Commissioner's decision denying disability benefits and remanded to the agency for a rehearing because "the administrative decision in this case reveals that the Administrative Law Judge erroneously relied on the opinion of a person with no medical credentials as a medical consultant." *Id.* at 448.  Specifically, in denying Dewey's disability claim, "the ALJ explicitly credited a 'Physical Residual Functional Capacity Assessment' authored by" a State agency counselor/examiner.  *Id.* Despite the fact that the State agency employee was not a physician and "lacked any other credentials that would qualify her to act as a medical consultant under 20 C.F.R. § 404.1616(b)[,]" the ALJ "labored under the belief that the Physical Residual Functional Capacity Assessment had been authored by a physician[.]" *Id.* at 448-49.  The Eighth Circuit determined that the ALJ's apparent misapprehension of the report resulted in a legally erroneous ruling which, in light of the fact that the ALJ had "refused to give controlling weight to [the more restrictive opinion of] Dewey's treating physician," could not be deemed harmless.  *Id.* at 449-50.

The circumstances in this case are substantially identical to those in *Dewey*.  First, "[t]here is certainly no substantial evidence that the Residual Functional Capacity Assessment in the record was the opinion of a physician." *Dewey*, 509 F.3d at 449.  Plaintiff first alleged this deficiency respecting the State agency Assessment in her initial brief.  *See*

8

Doc. #15 at 11. The Commissioner has not rebutted Plaintiff's assertion that the State agency disability examiner lacks the credentials of a physician or other medical expert. Likewise, in wholly adopting the findings of the State agency disability examiner and crediting them as "medical expert" opinion, it is evident that the ALJ "inadvertently weighed the opinion of a lay person under the rules appropriate for weighing the opinion of a medical consultant, which would be a legal error in applying the ruling." *Id.*[5] Given the ALJ's legal errors in assessing the weight to be given the State agency physical RFC assessment and the ALJ's decision to discount the opinion of Plaintiff's treating physician, this Court cannot conclude that "the ALJ would inevitably have reached the same result if he had understood that the [physical] Residual Functional Capacity Assessment had not been completed [or even reviewed] by a physician or other qualified medical consultant." *Id.* at 449-50. Accordingly, this matter is due to be reversed and remanded to the ALJ for rehearing.

## V.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the

---

[5]   Apart from describing the State agency disability examiner's opinion as the "opinion[] of . . . State agency medical experts," (Tr. 18), the ALJ also cited to Social Security Ruling 96-6p, also cited by the Commissioner in his brief, which provides that the opinions of "State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence" by the ALJ. (Tr. 18). While this citation is proper in the context of the Mental Residual Functional Capacity Assessment completed by a State agency psychological consultant (Tr. 203-21), it is not proper in the context of an assessment completed by a lay person and likely further demonstrates the ALJ's erroneous understanding of the State agency report. *Dewey*, 509 F.3d at 449 (noting the ALJ's "inapposite" citation of SSR 96-6p in relying upon the physical RFC assessment of a State agency lay examiner).

decision of the Commissioner is REVERSED and the case REMANDED for further proceedings consistent with this opinion.  A separate judgment will issue.

DONE this 30th day of December, 2008.

>  /s/ Wallace Capel, Jr.
>  WALLACE CAPEL, JR.
>  UNITED STATES MAGISTRATE JUDGE